UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THOMAS J. NEWMAN,                                        Civ. No. 14-2944 (MJD/JSM)

      Plaintiff,                                        REPORT AND RECOMMENDATION

v.

JP MORGAN CHASE BANK, N.A.,
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

      Defendants.

The above matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 3].  Jonathan L.R. Drewes, Esq. appeared on plaintiff's behalf. Curtis D. Ripley, Esq. appeared on defendants' behalf.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and Local Rule 72.1.

## I.   BACKGROUND

Plaintiff seeks to invalidate the foreclosure of the mortgage on his home.  Plaintiff asserts two claims against defendants: failure to comply with Minn. Stat. § 580.02 and an injunction to prevent defendant JP Morgan Chase from proceeding with an eviction it initiated against plaintiff in Hennepin County, Minnesota.

For the reasons described below, the Court recommends that defendants' Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.

### A.   Plaintiff's Complaint

Plaintiff sued JP Morgan Chase Bank, N.A. ("Chase") and Federal National Mortgage Association ("Fannie Mae") (collectively, "defendants") in state district court on June 18, 2014.  Notice of Removal, Ex. 1 (Summons and Complaint) [Docket No. 1-

1].  Based on diversity jurisdiction, defendants removed the suit to Federal District Court pursuant to 28 U.S.C. 1332(a).  Notice of Removal [Docket No. 1].  Defendants moved to dismiss the Complaint in lieu of answering.  Motion to Dismiss [Docket No. 3].

The facts bearing on defendants' motion to dismiss are as follows.  Plaintiff executed a mortgage in favor of Washington Mutual Bank, FA ("WAMU") on November 28, 2006, for property located in Hennepin County, Minnesota ("Property").  Complaint, ¶¶1, 6.  The mortgage was recorded with the Hennepin County Registrar of Titles on January 5, 2007.  Id., ¶6.  On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") was appointed as WAMU's receiver.  Id., ¶7.  That same day, Chase and the FDIC entered into a Purchase and Assumption Agreement ("PAA").  Affidavit of Curtis Ripley in Support of Motion to Dismiss ("Ripley Aff."), Ex. 1 (PAA) [Docket No. 6-1].  Pursuant to the PAA, the FDIC transferred WAMU's mortgage assets to Chase.  Id.  On October 29, 2008, Chase recorded an affidavit from the FDIC with the Hennepin County Registrar of Titles.   Complaint, ¶7, Ripley Aff., Ex. 2 (recorded Affidavit of Robert C. Schoppe, Receiver in Charge for FDIC as Receiver for Washington Mutual Bank).   This Affidavit stated "[a]s authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(2)(G)(i)(II),[1] the FDIC, as receiver of Washington Mutual, may transfer any asset or liability of Washington Mutual without any approval, assignment or consent with respect to such transfer."  Ripley Aff., Ex. 2, ¶3.  "As a result, on September 25, 2008, JP Morgan Chase became the owner of the loans and loan commitments of Washington Mutual by operation of law."  Id., ¶5.

---

[1]      The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") is codified at 12 U.S.C. § 1821 et. seq.

Plaintiff defaulted on his mortgage payments[2] and Chase, "a party with no registered interest in the Subject Property," foreclosed on the mortgage by advertisement.  Complaint, ¶9.  A sheriff's sale of the Property was held on April 15, 2014.  Id.  The Sheriff's Certificate of Sale and Foreclosure Record was recorded with the Hennepin County Registrar of Titles on April 23, 2014.  Id.; see also Ripley Aff., Ex. 3 (Sheriff's Certificate of Sale and Foreclosure Record) [Docket No. 6-1].  The Property was sold to Chase at the sheriff's sale for $352,075.33.  Ripley Aff., Ex. 3.  After the sheriff's sale, Chase transferred title of the Property to Fannie Mae by warranty deed.  Ripley Aff., Ex. 4 (warranty deed).

Plaintiff did not redeem the Property during the statutory redemption period and failed to vacate the Property, claiming that he was the "rightful owner of the Subject Property."  Complaint, ¶24.  In June, 2014, Chase commenced an eviction action in Hennepin County Housing Court.  Id., ¶25.  Plaintiff contended that Chase failed to comply with Minnesota's foreclosure-by-advertisement statute, Minn. Stat. § 580.02, because there is no recorded assignment of the mortgage to Chase.  Complaint, ¶¶16, 20.  Consequently, Chase was not entitled to foreclose.  Id., ¶13.  As relief, plaintiff sought a judgment declaring the sheriff's sale void and an injunction, enjoining "defendants and their successors-in-interest, from asserting claims of ownership, pursuing eviction, or purporting to transfer rights in the Subject property to third parties to which Defendants are not presently entitled."  Id., Prayer for Relief, ¶¶1, 2.

---

[2]     The Complaint does not state that plaintiff defaulted on his mortgage payments, but plaintiff has not denied that is the case.

B.      **Defendants' Motion to Dismiss and Plaintiff's Response**

Defendants moved to dismiss the Complaint, contending that plaintiff's sole theory regarding the alleged violation of Minn. Stat. § 580.02 -- that Chase foreclosed without recording an assignment from the FDIC -- was meritless and rejected by the district court in Luzaich v. JPMorgan Chase, Civ. No. 13-1869 (DWF/JSM), 2014 WL 300825 (D. Minn. Jan. 28, 2014) (Order Adopting Report and Recommendation). Defendants' Memorandum in Support of Motion to Dismiss ("Defs.' Mem."), pp. 5-6 [Docket No. 5]. In Luzaich, the district court concluded that even if the FDIC's recording of an affidavit documenting Chase's acquisition of "all loans and all loan commitments" of WAMU did not fulfill the requirement of Minn. Stat. § 580.02,

> the Court is persuaded that Chase was not obligated to record an assignment. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the mortgage was assigned to Chase by operation of federal law, which specifically authorizes the FDIC to transfer assets of a failed financial institution "without ... assignment." 12 U.S.C. § 1821(d)(2)(G)(i)(II). Through operation of the Supremacy Clause, U.S. Const. art. VI, cl. 2, "a transfer of a mortgage, authorized by federal law, obviates the need for the specific written assignment that state law would otherwise require." Demelo v. U.S. Bank Nat'l Ass'n, 727 F.3d 117, 125 (1st Cir. 2013). If no assignment was required to effectuate the transfer of plaintiffs' mortgage to Chase, then it follows that no assignment was required to be recorded prior to the foreclosure sale of the Property.

Id., p. 5 (quoting Luzaich, 2014 WL 300824, at *7). Defendants also submitted that the same conclusion was reached in Robinson v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-1868 (JNE/JSM), 2014 WL 258644 (D. Minn. Jan. 23, 2014) (Order Adopting Report and Recommendation). Moreover, courts in other jurisdictions have reached the same conclusion based on complaints following WAMU's collapse and the FDIC's transfer of

WAMU's assets to Chase through the PAA.  Id., pp. 7-8 (citing Drobny v. JPMorgan Chase Bank, N.A., 929 F. Supp. 2d 839, 841 (N.D. Ill. 2013); Beka Realty, LLC v. JPMorgan Chase Bank, N.A., Civ. No. 503666-12, 2013 WL 5629590, at *3 (N.Y. Sup. Ct. Sept. 25, 2013)).

Plaintiff did not address the holdings of Luzaich or Robinson in his opposition to Chase's motion.  Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Mem. in Opp."), pp. 4-12 [Docket No. 10].  Plaintiff argued that the PAA was an assignment and was required to be recorded before Chase could foreclose.  Id., pp. 5-6.  Plaintiff cited no cases to support this characterization of the PAA and instead relied on the definitions of "assignment" and "instrument" from Black's Law Dictionary.  Id., p. 5. Plaintiff submitted that while it "may potentially be technically possible for the FDIC to transfer the assets of Washington Mutual Bank to JPMorgan – pursuant to 12 U.S.C. § 1821(d)(2)(G)(i)(II) – without 'a written legal document' 'of transfer,' such an event is practically unlikely and nevertheless did not happen here."  Id., p. 6.

Plaintiff further contended that the Minnesota Supreme Court's statement in Ruiz v. 1st Fid. Loan Serv., LLC, 829 N.W.2d 53, 54 (Minn. 2013), that all assignments had to be recorded "before the mortgagee has the right to engage in the process of foreclosure by advertisement," was dispositive.  To comply with Minn. Stat. § 580.02(3), plaintiff maintained that Chase was required to record an assignment from the FDIC, without exception.  Id., pp. 7-12.  Plaintiff submitted a print-out of results from a search plaintiff's counsel conducted at the Hennepin County Registrar of Title's office, which showed hundreds of assignments of mortgage recorded by the FDIC.  Declaration of Jonathan L.R. Drewes ("Drewes Decl."), Exs. A-L [Docket No. 11, 11-1].  According to plaintiff,

this showed that the FDIC assigned its interests in many other cases, and if it was true that it was unnecessary to record the assignment in this case, then "all of these other banks are wasting time and money actually doing what Chase insists is unnecessary." Pl. Mem. in Opp., p. 11.  Plaintiff argued that Chase could have conducted a judicial foreclosure, which would have relieved it of the recording duties imposed by the foreclosure-by-advertisement statute. Id., p. 9.

Plaintiff conceded that the Anti-Injunction Act, 28 U.S.C. § 2283, imposed an absolute prohibition on federal courts from enjoining state court proceedings unless the injunction fell within one of three exceptions described by the statute.  Id., p. 2. Consequently, plaintiff admitted that " Count II seeking injunctive relief cannot succeed here in federal court."  Id.

Defendants replied that plaintiff was simply wrong that Ruiz required the recording of an assignment, because FIRREA expressly provided that no assignment was necessary and federal law trumps the state recording requirement.  Defendants' Reply Memorandum ("Defs.' Reply"), p. 1 [Docket No. 14].  Defendants reiterated the significant of Luzaich and Robinson.  Id., p. 4.  Defendants also submitted a copy of a state district court order granting summary judgment to Chase on virtually the same claims plaintiff has alleged in the instant case.  Second Affidavit of Curtis Ripley, Ex. A (summary judgment order dated August 18, 201, Bakri v. JP Morgan Chase et. al., 02-cv-11-4667 (Tenth Judicial District, Anoka County, Minnesota) [Docket Nos. 15, 15-1].[3] In Bakri, the plaintiff asserted that Chase's foreclosure of his mortgage was void

---

[3]     Plaintiff has filed a Notice of Appeal in Bakri.
http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1614611359 .

because Chase did not record an assignment of the mortgage from the FDIC, acting as receiver for WAMU.  Id., p. 6.[4]  The state court considered whether "the FDIC may transfer an interest in the mortgage pursuant to [12 U.S.C. § 1821(d)(2)(G)(i)(II)] without such transfer being considered an assignment under Minnesota statutes."  Id.  The state court concluded that the federal banking statute superseded Minnesota's foreclosure-by-advertisement statute and that the transfer from the FDIC to Chase was not an assignment requiring recording.  Id. (citing inter alia Luzaich, 2014 WL 300824, at *6).

The court noted:

> Plaintiff's extensive citation of 19th century holdings of the Minnesota Supreme Court misses the point.  Plaintiff is surely correct that a foreclosing party must have an interest in the mortgage and any assignments must be recorded before foreclosure.  Neither of these propositions encumbers the power of Congress to carve out an exception pursuant to its authority to regulate interstate commerce.  Here, the federal statute supersedes state law and prevents application of Minn. Stat. § 580.02(3) where the transfer of the mortgage occurs pursuant to the FDIC's receivership powers.

Id., p. 7.  According to defendants, this recent case "is in line with the holdings from this District and across the nation, and further confirms that Chase did not need to record a mortgage assignment before foreclosing by advertisement under this circumstance."  Defs.' Reply, p. 5.

Defendants rejected plaintiff's argument about the availability of judicial foreclosure as "wholly irrelevant" because Chase was entitled to proceed with the foreclosure by advertisement.  Id., p. 8.

---

[4]     The Court is referring to the page numbers assigned through the court's electronic filing system.

Lastly, defendants contended that it was impossible to draw any conclusions based on the print-outs plaintiff's counsel submitted.  Id., p. 9.  Defendants noted that nothing was known about the circumstances of these mortgages or what role the FDIC played in the mortgages.  Id., p. 9.  As a result, the "information is not credible evidence of anything."  Id.

At the motion hearing, plaintiff's counsel continued to insist that the PAA was an assignment that had to be recorded.  Transcript of Hearing ("Tr."), pp. 13-14 [Docket No. 20].  As evidence, counsel pointed to Article 3.1 of the PAA, which stated:

> Subject to Sections 3.5, 3.6 and 4.8, the Assuming Bank hereby purchases from the Receiver and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing.

Tr. 19 (citing Ripley Aff., Ex. 1, p. 9) (emphasis added).  According to counsel, the use of the word "assigns" in this passage established that the PAA was an assignment.  Tr. 20.

Further, at the hearing, plaintiff's counsel raised for the first time a new argument regarding preemption, which was not reflected in his responsive brief.[5]

---

[5]    The Court could have refused to consider this argument.  See, e.g., American Prop. Dev. Sw., LLC v. Landform Eng'g Co., Civ. No. 07-3556 (DWF/AJB), 2007 WL 4461506, at *3 (D. Minn. 2007) ("The Court recognizes that because [plaintiff's] primary argument was not raised in its brief, the Court need not address it.") (citing Thomsen v. Ross, 368 F.Supp.2d 961, 974, n. 9 (D. Minn. 2005) (concluding that plaintiff had abandoned claims not addressed in response to summary judgment)).  Nonetheless, the Court allowed the argument and permitted defendants to submit a supplemental

Plaintiff's counsel then argued that the Demelo case, relied upon by the court in Luzaich, was distinguishable because in Demelo there was a clear conflict between 12 U.S.C. § 1821(d)(2)(G)(i)(II) and a Massachusetts statute that required transfers of real property to be in writing.  Tr. 16.  According to counsel, "[h]ere in Minnesota we don't have that."  (Id.).  As a result, implied conflict preemption – the only form of preemption that could be considered -- did not apply because there is no conflict between the federal banking statute and Minn. Stat. § 580.02 where Chase had an assignment (i.e. the PAA) that it could have recorded, or alternatively, it could have foreclosed by action rather than advertisement.  Tr. 25-26.

**C.    Defendants' Supplemental Brief**

Defendants responded to plaintiff's preemption argument by first arguing that the PAA was not an assignment that would trigger Minn. Stat. § 580.02.  Defendants' Supplemental Memorandum in Support of Motion to Dismiss ("Def. Suppl. Mem."), 3-7 [Docket No. 21].  Defendants noted that FIRREA expressly states that the FDIC may transfer assets "without assignment" and courts considering the application of the statute in connection with WAMU's transfer of assets have recognized the distinction between transfers under FIRREA and mortgage assignments.  Id.  Defendants contended that consistent with FIRREA, the FDIC and Chase did not execute an assignment.  Id., pp. 4-5.  Instead, the FDIC transferred WAMU's assets through the

---

brief in light of the fact that defendants were seeking dismissal of plaintiff's Complaint with prejudice.  As the Court did not countenance plaintiff's untimely preemption argument, plaintiff was not given an opportunity to file a response to this supplemental brief.  Nevertheless, on November 12, 2014, plaintiff's counsel requested the opportunity to file a short letter to address an allegedly improper citation by defendants in their supplemental brief.  The Court agreed to this request and the letter was filed.  See Docket No. 22.

PAA.  Id., p. 5.  Furthermore, merely because the PAA used the word "assigns" in Article III did not make the PAA an "assignment."  Id., pp. 5-7.  That word appeared in a laundry list of terms intended to show that the FDIC was transferring all of WAMU's assets to Chase.  Not a single court to consider the PAA has treated it as a "mortgage assignment."  Id., p. 6 (citing Drobny, 929 F.Supp.2d at 839; Beka Realty, LLC, 2013 WL 5629590; Trice v. JP Morgan Chase Bank, Civ. No. 63052, 2013 WL 5432353 (Nev. 2013); FTBK v. Joshua Mgmt., 2013 N.Y. Misc. LEXIS 640)).

Consequently, defendants submitted that no preemption analysis was necessary because there is no conflict between state and federal law.  Id.  FIRREA states that the FDIC can transfer assets "without assignment," which is what the FDIC did when it transferred WAMU's assets to Chase pursuant to the PAA.  Id.  Therefore, according to defendants, there was no assignment that Chase failed to record.

However, even if the Court conducted a preemption analysis, defendants contended that the result would be the same.  Id., pp. 11-17.  Because FIRREA does not expressly preempt Minn. Stat. § 580.02, defendants argued that the Court should analyze the issue under conflict preemption.  Id., pp. 12-13.  Applying that analysis, FIRREA provides broad authority to the FDIC to dispose of a failed bank's assets free from any approval, assignment or consent requirements that might apply.  Id., p. 14.  Any requirement that a transfer pursuant to FIRREA had to comply with state recording requirements would frustrate the purpose of the statute and conflict with the FIRREA provision that permits the FDIC to "transfer any asset or liability of the institution in default . . . without any approval, assignment or consent with respect to such transfer."

Id., pp. 16-17.   Therefore, even if the Court construed the PAA as an assignment, conflict preemption rendered recording the assignment unnecessary.   Id., pp. 11-17.

### D.   Plaintiff's Response to Defendants' Supplemental Brief

In plaintiff's letter responding to defendants' supplemental brief, plaintiff took issue with defendants' statement that "no court has used or relied upon a preemption analysis to find that, notwithstanding the express provision of federal law that FDIC transfers are 'without assignment,' a foreclosing party must nonetheless record a mortgage assignment pursuant to state law."   Id. (quoting Defendant's Supplemental Brief, p. 2).   Plaintiff submitted that Chase "itself lost similar arguments" and directed the Court to Kim v. JP Morgan Chase Bank, N.A., 825 N.W.2d 329, 335-336 (Mich. 2012). Id.

## II.   LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.   Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.   Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).   At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for

summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003).  Applying this standard, the Court has considered the Affidavit of Curtis Ripley and attached exhibits [Docket No. 6]; the Affidavit of Jonathan L. R. Drewes and attached exhibits [Docket No. 11] and the Second Affidavit of Curtis Ripley, attaching the state court's Bakri summary judgment decision.  [Docket No. 15-1].

For the reasons set forth below, the Court concludes that plaintiff has failed to state a claim for relief and therefore, defendants' motion should be granted.

## III.    DISCUSSION

### A.    The PAA Was Not An Assignment

Plaintiff's argument that the PAA was an assignment that had to be recorded pursuant to Minn. Stat. § 580.02 is rejected.  The Court agrees that the word "assigns" in Article III of the PAA did not make the PAA an assignment.  That word appears in a list of words, all of which are plainly intended to state that the FDIC was transferring all of WAMU's assets to Chase.  See Ripley Aff., Ex. 1, Article III.  Additionally, it is abundantly clear that the FDIC's transfer WAMU's assets to Chase was based on

12

FIRREA, which explicitly states that the FDIC can transfer the assets of a failed bank "without assignment."   This is precisely the basis of the holdings in <u>Luzaich</u> and <u>Robinson</u> – that no recording of an assignment was necessary because the transfers of assets took place "without assignment" and by operation of law.  Plaintiff did not cite a single case in which a court has concluded that the PAA was an assignment required to be recorded.  Courts to consider the transfer of WAMU's assets from the FDIC to Chase have generally concluded that Chase was <u>not</u> required to record an assignment.  For example, in <u>Drobny</u>, plaintiffs argued that Chase acquired WAMU's banking assets through a PAA and then alleged that Chase failed to provide a mortgage assignment. 929 F.Supp.2d at 845, fn. 2.  The court rejected that claim:

> First, as to Chase's failure to supply a mortgage assignment, there is no such requirement, as made clear both by federal and state law. Federally, the FDIC, as receiver of Washington Mutual Bank, was empowered to transfer the Bank's assets without an assignment. <u>See</u> 12 U.S.C. § 1821(d)(2)(G)(i)(II) (receiver may "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer"); <u>FTBK Investor II v. Mercy Holding</u>, 36 Misc.3d 1219(A), 2012 WL 3064864 at *5 (N.Y.Sup.Ct. July 24, 2012) (citing 12 U.S.C. § 1821(d)(2)(G)(i)(II) and rejecting borrowers' argument "that the note had to have been individually negotiated and physically indorsed to Chase [by the FDIC] through an allonge").

<u>Id.</u> at 845.

In <u>Beka Realty, LLC</u>, 2013 WL 5629590, plaintiff challenged the foreclosure of his mortgage, arguing that the foreclosure was void because there was no recorded assignment of the mortgage from WAMU to Chase.  <u>Id.</u> at *2.  The court held that the FDIC, as WAMU's receiver, was permitted to "transfer any asset or liability" of WAMU

"without any approval, assignment, or consent with respect to such transfer." Id. (quoting 12 U.S.C. §1821(d)(2)(G)(i)(II)).  The court further held

> Consistent with this statutory provision, the FDIC transferred all of WaMu's loans and loan commitments to Chase pursuant to the September 25, 2008 PAA.  As noted above, sections 2.1 and 3.1 of the PAA provided that "[Chase] specifically assume[d] all of the mortgage servicing rights and obligations of [WaMu]."  Courts have, therefore, consistently held that Chase became the owner of all of WaMu's loans and loan commitments by operation of law and that Chase is entitled to enforce the acquired WaMu loans . . . [t]hus, by virtue of the PAA, Chase became the assignee of the Note and Mortgage.  Id. at *3 (citations omitted).

The court in Trice reached the same conclusion when a property owner challenged a foreclosure on the ground that Chase failed to produce an assignment of her mortgage:

> The district court correctly found that no assignment was necessary, as respondent obtained ownership of appellant's loan from the Federal Deposit Insurance Corporation as part of a large-scale acquisition of Washington Mutual's assets. See 12 U.S.C. § 1821(d)(2)(G)(i) (2006) (affording the FDIC the power to "transfer any asset or liability of the institution in default ... without any approval, assignment, or consent with respect to such transfer"); Drobny v. JP Morgan Chase Bank, NA, —— F.Supp.2d ——, ——, 2013 WL 888628, *5 (N.D.Ill.2013) (indicating that the FDIC's power to transfer assets under 12 U.S.C. § 1821(d)(2)(G)(i) obviates the need for an assignment of each individual loan).

2013 WL 5432353, at *1.

Lastly, in FTBK Invest., the court rejected a defendant's argument that plaintiff, a successor-in-interest to Chase, lacked standing to foreclose on a mortgage because plaintiff lacked written proof of an assignment to Chase from WAMU or the FDIC as WAMU's receiver.  2013 N.Y. Misc. LEXIS 640, at *8.  The court noted:

14

> Plaintiff correctly points out that the FDIC clearly had the authority to transfer the loans in bulk to Chase pursuant to 12 U.S.C. § 1821(d)(2)(G)(i)(II), and that an individual negotiation, i.e. assignment, of each loan was not required. Pursuant to 12 U.S.C. § 1821(d)(2)(G)(i)(II), the FDIC, as receiver of a failed bank, is authorized to "transfer any asset or liability of the institution in default. . . without any approval, assignment, or consent with respect to such transfer." According to the express terms of the statute, a valid transfer of the assets of a failed bank from the FDIC occurs even without a formal assignment instrument.  As evidenced by the terms of the PAA, Chase acquired all assets of WaMu, with certain exceptions not applicable to this action. Specifically, Section 3.1 of the PAA provides that . . . "[Chase] hereby purchases from the receiver [FDIC], and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Institution, all right, title, and interest of the Receiver in and to all of the assets. . . of the Failed Bank [WaMu].

Id., at *14 (emphasis in original) (citation omitted).

In the final analysis, plaintiff's only evidence that the PAA was an assignment is the use of the word "assigns" in Article III.  That single word is completely inadequate to support a finding that the PAA was an assignment that needed to be recorded pursuant to Minn. Stat. § 580.02.   The PAA was not an assignment and the FDIC transferred WAMU's assets to Chase through operation of law.   Therefore, there is no conflict between Minn. Stat. § 580.02, Ruiz, and FIRREA and no preemption analysis is necessary.[6]

---

[6]     Even if assuming the PAA was an assignment, conflict preemption mandates that Chase could not be compelled to record the assignment pursuant to Minn. Stat. §580.02 because doing so would conflict with FIRREA.   "Conflict preemption occurs when compliance with both federal and state laws is impossible, and when a state law 'stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." Keller v. City of Fremont, 719 F.3d 931, 940 (8th Cir. 2013) (quoting Arizona v. United States, 132 S.Ct. 2492, 2501 (2012)).  "Congress enacted [FIRREA] with the objects of preventing the collapse of the industry, attacking the root causes of the [savings and loan] crisis, and restoring public confidence."  United States v. Winstar

Corp., 518 U.S. 839, 856 (1996).  "Congress granted the FDIC broad powers in conserving and disposing of the assets of the failed institution.  To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit on the power of the courts to interfere with the FDIC's efforts . . . ."  Deutsche Bank Nat'l Trust Co. v. F.D.I.C., 744 F.3d 1124, 1128 (9th Cir. 2014); see also Iberiabank v. Beneva 41-I, LLC, 701 F.3d 916, 921 (11th Cir. 2012) (FIRREA granted the FDIC broad powers to "manage the affairs of insolvent banks as receiver or conservator); GECCMC 2005-C1 Plummer Street Office P'ship v. JP Morgan Chase Bank, N.A., 671 F.3d 1027, 1030 (9th Cir. 2012) ("FIRREA provides for prompt and efficient resolution of the assets and liabilities of failed banks.").

In a purchase and assumption transaction pursuant to FIRREA, the FDIC is entitled to transfer the assets of the failed bank "without assignment" and in that regard, any restrictions on this power to transfer imposed by state law are preempted.  See Sahni v. American Diversified Partners, Inc., 83 F.3d 1054, 1059 (9th Cir. 1996) (assuming a provision of the California Corporations Code requiring consent of a limited partner to the sale of HUD partnerships was applicable, that provision was preempted by 12 U.S.C. § 1821(d)(2)(G)(i)(II) because Congress explicitly authorized the FDIC to "transfer any asset or liability of the institution in default . . .without any approval, assignment or consent to such transfer.") (emphasis in original); Federal Deposit Ins. Corp. v. Bank of Boulder, 911 F.2d 1466, 1472-1473 (10th Cir. 1990) (state law restriction on transfer of letters of credit is preempted by 12 U.S.C. § 1823, which allows the FDIC to purchase "any assets" of a failed bank).  Consistent with these cases, the Court finds that conflict preemption would require that the recording requirement of Minn. Stat. § 580.02 yield to 12 U.S.C. § 1821(d)(2)(G)(i)(II).  To find otherwise would impermissibly restrain the powers of the FDIC under FIRREA.

Also, this Court was not persuaded by the Michigan court's reasoning in Kim v. JP Morgan Chase Bank, N.A., 825 N.W.2d 329, 335-336 (Mich. 2012) (Zahra, J., Young, C.J. and Kelly, J. dissenting).  There, the court concluded that Chase had to comply with Michigan's recording statute to foreclose by advertisement because the PAA did not transfer the FDIC's interests in WAMU's assets "by operation of law."  Id. at 333-339.  The Michigan court conducted no preemption analysis and based its decision on an 1885 state case defining "operation of law" to mean "involuntarily" or "unintentionally."  Id. at 334-336.  Because Chase entered into the PAA with the FDIC, its actions were not "involuntary."  Id. at 334-335.  Of course, this Court is not bound by the Kim decision, but in any event it was much more persuaded by three-justice dissent.  Id., pp. 340-348.  The dissent emphasized the language of 12 U.S.C. § 1821(d)(2)(G)(i), which permits the transfer of assets "without any approval, assignment, or consent with respect to such transfer" and rejected the majority's characterization of the PAA as an ordinary contract.  Id. at 342.  In fact, the PAA was intended to transfer WAMU's assets by operation of law, and without an assignment.  Id. at 341.  The dissent stated:

The evidence shows an unbroken chain of title from the FDIC to Chase (pre-foreclosure) and from Chase to Fannie Mae by warranty deed (post-foreclosure). See Ripley Aff., Exs. 1 (PAA dated September 25, 2008), 2 (FDIC affidavit), 4 (Limited Warranty Deed from Chase to Fannie Mae). The Sheriff's Certificate of Sale, (Ripley Aff., Ex. 3), is prima facie evidence that Chase (the foreclosing entity) complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper. See Minn.Stat. § 580.19. Plaintiff stated no facts in his Complaint to rebut this evidence and there is no evidence that Chase was not entitled to foreclose on the Mortgage.

Finally, the Court agrees with defendants that the print-outs plaintiff submitted in response to defendants' motion to dismiss do not prove plaintiff's point regarding the alleged necessity of recording an assignment from the FDIC to Chase. As defendants observed, the Court has no information on these mortgages, why they were assigned, and under what circumstances. But assuming for the sake of argument that these

---

Chase was exempt from the requirements of MCL 600.3204(3) because it obtained the mortgage by operation of law.

\*\*\*

[T]he statute implies that when no assignment has occurred, the party holding the mortgage has stepped into the shoes of the original mortgagee. When there has been no assignment of a mortgage, there can be no assignment to record. Accordingly, because Chase acquired the plaintiffs' mortgage by operation of law instead of by assignment, and was thus legally considered the original mortgagee, it was not required to record anything in the chain of title.

Id. at 346. At any rate, whether Kim was wrongly or rightly decided has no bearing on the Court's decision in the instant case because the case is not precedential, devoid of any conflict preemption analysis, and the majority opinion was based on Michigan state law not at issue in this case.

assignments were made under exactly the same circumstances as presented in this case (and there is no evidence that is true), the Court's conclusion would be the same. Any assignment would be redundant because the FDIC's assignment of its interests to Chase occurred by operation of law.  If other banks "are wasting time and money doing what Chase insists is unnecessary," that is the business of the other banks and does not change the Court's analysis.  Moreover, the availability of judicial foreclosure also does not change the outcome.  Chase chose to proceed with the foreclosure by advertisement and was there no impediment to doing so.

### B.    Plaintiff Is Not Entitled to Injunctive Relief

Count II of the Compliant is entitled "Injunction."  Complaint, ¶¶23-27.  An injunction is a remedy, not a cause of action.  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 211, N. 1 (2002) ("an injunction is inherently an equitable remedy . . . ."); Labrant v. Mortgage Electronic Regis. Sys., Inc., 870 F.Supp.2d 671, 683 (D. Minn. 2012) (citing Henke v. Arco Midcon., LLC, 750 F.Supp.2d 1052, 1059-60 (E. D. Mo. 2010) ("[i]njunctive relief, however, is a remedy, not an independent cause of action.")).  As such, dismissal of this count is appropriate because the remedy depends wholly upon the viability of plaintiff's claims regarding the validity of the foreclosure. Because plaintiff's underlying claim fails, his claim for injunctive relief fails.

Additionally, as plaintiff conceded, his claim for an injunction is barred by the Anti–Injunction Act, which states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The Supreme Court has interpreted the Act as 'an

absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions' included in the language of the statute." Canady v. Allstate Ins. Co., 282 F.3d 1005, 1013–1014 (8th Cir. 2002) (quoting Atlantic Coast Line R.R. v. Locomotive Eng'rs, 398 U.S. 281, 286–87 (1970), abrogation on other grounds as recognized by Arkansas Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 821–22 (8th Cir. 2009)). "Courts must construe the exceptions to the Anti–Injunction Act narrowly and resolve doubts in favor of letting the state action proceed." Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., 77 F.3d 1063, 1068 (8th Cir.1996).

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 3] be **GRANTED.**

2.      This matter be dismissed with prejudice.[7]

---

[7]      When a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. Such is the case here. See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n.6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

Dated: November 17, 2014

*Janie S. Mayeron*
ANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 1, 2014**, a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.